**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **Civil Action No. 07-1337 (RMC)** |
| | : | |
| **ALL PROPERTY IN/UNDERLYING** | : | |
| **E-GOLD ACCOUNT NUMBERS:** | : | |
| | : | |
| **544179 AND 109243,** | : | |
| **Defendant.** | : | |
| _____ | : | |
| | : | |
| **Gold & Silver Reserve, Inc., and** | : | |
| **e-gold, Ltd.,** | : | |
| **Claimants.** | : | |
| _____ | : | |

**PLAINTIFF'S MOTION TO STAY
AND SUPPORTING MEMORANDUM**

*COMES NOW*, plaintiff United States of America, by and through its attorney, the

United States Attorney for the District of Columbia, to move for a stay of proceedings in this

civil forfeiture action until 30 days after the return of a verdict in a related criminal case, United

States v. e-gold, Ltd., *et al.*, Crim. No. 07-0109 (RMC).  Plaintiff seeks this stay because "civil

discovery will adversely affect the ability of government to conduct . . . the prosecution of a

related criminal case," pursuant to 18 U.S.C. § 981(g)(1).  In support of this motion, plaintiff

respectfully submits as an incorporated Memorandum of Law the points and authorities cited

below:

**I.  BACKGROUND.**

1.     On April 24, 2007, a federal grand returned a four-count indictment, including a

forfeiture allegation, which charged two entities, e-gold, Ltd., and Gold & Silver Reserve, Inc.,

and three individuals with unlawful conspiracy and related financial crimes, in violation of 18

U.S.C. §§ 371 (conspiracy) 1956 (money-laundering and conspiracy), and 1960 (operating an

unlicensed money-transmitting business).  This prosecution now is before this Court in United

States v. e-gold, Ltd., et al., Crim. No. 07-109 (RMC).  The government alleges that defendants

ran the "E-Gold operation," which is an electronic system for transferring funds over the

"Internet," using accounts opened and accessed through the Internet.  The government also

alleges that the E-Gold operation is primarily managed and operated by the two defendant

entities, e-gold, Ltd. (hereafter called "EGL"), and Gold & Silver Reserve, Inc. (hereafter called

"GSR").

     2.     On April 26, 2007, and on May 4, 2007, this Court issued warrants to seize

property that was in or "underlying" various accounts in the E-Gold operation, including two

with the identifying numbers 544179 and 10923.  When federal agents executed the warrants for

E-Gold account numbers 544179 and 10923, they got control of property valued at

$1,481,976.38.

     3.     Thereafter, the government brought on July 24, 2007, this civil forfeiture

complaint in rem against the property seized from E-Gold account numbers 544179 and 10923.

The complaint alleges that the property should be forfeited to the United States because of its ties

to financial crimes in violation of 18 U.S.C. § 1956 & 1960.  See 18 U.S.C. § 981(a)(1)(A) &

981(a)(1)(C) (authorizing forfeiture of property based on links to particular crimes).

     4.     When plaintiff brought this civil forfeiture action, it filed a "Notice of Related

Case" citing United States v. e-gold, Ltd., et al., Crim. No. 07-109 (RMC), pursuant to LCvR

40.5.[1]  On September 26, 2007, EGL and GSR filed verified claims to the defendant property, entering the case to oppose its forfeiture.  These entities are the two defendants with the same names in the criminal case in United States v. e-gold, Ltd., *et al.*, Crim. No. 07-109 (RMC).  The same lead counsel represent both entities in this civil forfeiture action and the related criminal case.

5.    In a docket entry dated October 22, 2007, this Court set the related criminal case for trial on October 27, 2008.

6.    On January 7, 2008, claimant GSR propounded civil discovery to the plaintiff United States, including 27 interrogatories and 25 requests for production of documents.  Among the requests for production of documents is number 21, which requests the government to provide "All documents reviewed by Agent Roy Dotson or any person working with him concerning matters reflected in the Dotson Affidavits."  Request for document production number 20 seeks, "All documents created by Agent Roy Dotson or any person working with him concerning matters reflected in the Dotson Affidavits."[2]

7.    Among the civil discovery requested by GSR's interrogatories are the following: (A) "Identify each individual likely to have discoverable information that you may use to support your claims in this matter, identify the subjects of the information that each such person posses." [*sic*]  Interrogatory No. 5.  (B) "Give a complete account of the facts upon which you intend to

---

[1]  The government also cited related civil case, United States v. All Funds on Deposit in Suntrust Account Number XXXXXXXXX8359, Civ. Act. No. 05-2497 (RMC).

[2]  The Dotson affidavits refer to affidavits prepared by Roy Dotson, a special agent of the United States Secret Service, an agency of the Department of Homeland Security, which were submitted in support of applications for warrants to seize property involved in the E-Gold operation, generally property in or underlying specific E-Gold accounts.

rely to support the assertion that e-gold has been widely accepted as a mechanism for child exploitation, including in your response the identities of all persons whom you contend have used e-gold for such purposes, the nature of the transactions in which they engaged, the dates of such transactions and the identities of all parties involved in such transactions."  Interrogatory No. 10. (C) Identify all the persons who investigated the Claimant Companies on behalf of the Plaintiff and, for each such person, identify the agency for which that person worked and the title that she/he held, the dates that she/he was involved in the investigation, the identities of all persons with whom she/he communicated as a part of the investigation, all conclusions that she/he reached and identify all documents that she/he created as a part of that investigation." Interrogatory No. 11.  (D) "Identify by account number all e-gold accounts that any person investigating the Claimant Companies or other digital currency exchangers on behalf of the United States opened as a part of such an investigation, and identify the person(s) who opened that account."  Interrogatory No. 12.  (A copy of claimants's propounded discovery is attached.)

## II.  GOVERNING LAW.

8.      Title 18, U.S.C. § 981, authorizes the civil forfeiture of certain property based on its connection to various crimes, and § 981(g)(1) authorizes a stay of civil forfeiture proceedings on the government's motion.  In a civil forfeiture action, the United States is entitled to a stay when "civil discovery will adversely affect the ability of the Government to conduct a related criminal investigation or the prosecution of a related criminal case."  18 U.S.C. § 981(g)(1); see United States v. All Funds on Deposit in Suntrust Account Number XXXXXXXXX8359, 456 F. Supp.2d 64, 65 (D.D.C. 2006) (when government satisfies court that civil discovery would adversely affect related criminal case, then court must grant stay).

9.      In federal criminal cases, the "*Jencks* Act," codified at 18 U.S.C. § 3500, governs

"Demands for production of statements and reports of witnesses."   It states:

> In any criminal prosecution brought by the United States, no
> statement or report in the possession of the United States which
> was made by a Government witness or prospective Government
> witness (other than the defendant) shall be the subject of a subpena,
> discovery, or inspection until said witness has testified on direct
> examination in the trial of the case.

18 U.S.C. § 3500(a).  Similarly, Fed.R.Crim.P. 16 governs the government's duty to supply

discovery in criminal cases.  Rule 16(a)(1)((E) limits criminal discovery of documents to those

that  (1) are material to preparing the defense; (2) the government intends to use in its case-in-

chief; (3) were obtained from, or belong to, the defendant.  Moreover, Rule 16(a)(2), specifically

states that:

> Except as Rule 16(a)(1) provides otherwise, this rule does not
> authorize the discovery or inspection of reports, memoranda, or
> other internal government documents made by an attorney for the
> government or other government agent in connection with
> investigating or prosecuting the case.  Nor does this rule authorize
> the discovery or inspection of statements made by prospective
> witnesses except as provided in [the <u>Jencks</u> Act], 18 U.S.C. §
> 3500.

10.      When this Court stayed a nearly identical case with effectively the same parties in

2006, it noted that "civil discovery may not be used to subvert limitations on discovery in

criminal cases, by either the government or by private parties."  <u>United States</u> v. <u>All Funds on

Deposit in Suntrust Account Number XXXXXXXXX8359</u>, <u>supra</u>, 456 F. Supp.2d at 65 (quoting

<u>McSurely</u> v. <u>McClellan</u>, 138 U.S. App. D.C. 187, 194-195, 426 F.2d 664, 671-72 (D.C. Cir.

1970)).  "Where a criminal investigation and a civil forfeiture action have common facts, similar

alleged violations and some common parties, the actions are clearly related.  Where civil

discovery would subject the government's criminal investigation to early and broader civil discovery than would otherwise be possible in the context of the criminal proceeding, a stay should be granted." Id. at 65-66 (citing United States v. One Assortment of Seventy-Three Firearms, 352 F. Supp.2d 2, 4 (D. Me. 2005)) (other internal quotation marks and citations omitted); cf. United States v. All Funds Deposited in Account No. 200008524845, 162 F. Supp.2d 1325 (D. Wyo. 2001) (stay granted where civil discovery had substantial potential of interfering with ongoing criminal investigation).

### III.  ARGUMENT.

11.    This Court should stay these civil proceedings until 30 days after the conclusion of the trial in the related criminal case.  It should do so for three reasons:  (1) the civil discovery propounded will yield claimants more information than they are entitled under criminal discovery rules: (2) civil discovery necessitates the government identifying persons – particularly civilian, non-police witnesses – who will testify at the criminal trial; and, (3) answering civil discovery now will consume the time of law enforcement agents who are preparing for the criminal trial in October.

12.    The civil discovery quoted in part above, which claimants have propounded, manifestly is far broader than the criminal discovery authorized under either the *Jencks* Act or Fed.R.Crim.P 16(a).  If answered before the pending criminal trial, these civil discovery requests will supply to claimants more information – and vastly more documents – than the same entities (and related persons) are entitled to receive in their parallel position of defendants in the related criminal case.  Although the specific requests for production of documents cited above are not exhaustive, they show that claimants's civil discovery seeks documents that the *Jencks* Act and

Rule 16 do not permit the government to be required to produce.  Unless the Court stays this civil

forfeiture proceeding, claimants must receive all of this information well before the criminal trial

in October 2008.[3]

13.    Additionally, this civil matter should be stayed because answering claimants's

interrogatories forces the government to identify witnesses it will call at the criminal trial,

especially including ones who are not law enforcement agents.  In general, the government is not

required to identify its witnesses to a criminal defendant in advance of trial.  See United States v.

White, 325 U.S. App. D.C. 282, 297, 116 F.3d 903, 918 (D.C. Cir. 1997) ("constitutional right to

cross examine has never been held to encompass a right to pretrial disclosure of prosecution

witnesses," citing Weatherford v. Bursey, 429 U.S. 545, 559 (1977) (holding that Brady v.

Maryland, 373 U.S. 83 (1963), creates no government duty to disclose names of witnesses);

United States v. Bolden 169 U.S. App. D.C. 60, 71, 514 F.2d 1301, 1312 (D.C. Cir. 1975)

(finding that in a non-capital case there is no government duty to disclose its witness list);

Fed.R.Crim.P. 16 (omitting names of witnesses from items subject to government disclosure)).[4]

---

[3]  In no sense should the government's argument be read to imply that claimants's civil discovery is incorrectly overbroad, or that the issue of a stay could be avoided if claimants's discovery were cut back.  Although the government reserves its rights to make any appropriate argument about the scope of claimants's currently propounded discovery, overbreadth is not now the issue.  Even more-tailored civil discovery by claimants – on current posture and facts of these related civil and criminal cases – would likely adversely affect the government's prosecution of its criminal case.  See Campbell v. Eastland, 307 F.2d 478, 487 (5th Cir. 1962), cert. denied, 371 U.S. 955 (1963) (in considering civil stays, judges need to be sensitive to the differences between the policies and objectives of the civil rules of discovery and the criminal discovery rules).

[4]  Obviously, the government's desire to shield the identities of its "non-police" or "civilian" witnesses is greatest in trials of violent or drug-related crimes.  Still, the same principle applies in white-collar and criminal cases.  Among claimants's interrogatories is No. 10, which seeks a complete account of the facts that support the government's assertion that "e-gold has been widely accepted as a mechanism for child exploitation," including "the identities of all

14.     Last, without a stay, the government's prosecution of its criminal case will be adversely affected by civil discovery simply because our agents cannot both prepare for criminal trial and simultaneously help to compile the extensive material that claimants seek to discover. To borrow a cliche, answering civil discovery now is robbing Peter to pay Paul.  If the Court grants a stay, then the government's agents will not be deflected from their key duties in preparing the criminal case for trial.  When the criminal trial has been completed, these agents will be freed from those tasks and can turn to the laborious job of assisting with claimants's civil discovery responses (assuming this case remains at issue).

15.     If the Court grants this motion, plaintiff will move to convene a status hearing in this action following the verdict, or otherwise advise the Court when the stay may be dissolved.

16.     Undersigned counsel contacted claimant's counsel, Mr. Aron U. Raskas, Esq., who indicated that he opposes the requested relief.  A proposed order is attached.

**WHEREFORE**, plaintiff prays this Honorable Court to grant this motion, to stay proceedings in this matter, and to issue the attached proposed order.

Respectfully submitted,

 /s/ *Jeffrey A. Taylor*
JEFFREY A. TAYLOR, D.C. Bar #498610
United States Attorney

---

persons whom you contend have used e-gold for such purposes, the nature of the transaction in which they engaged, the dates of such transactions and the identities of all parties involved in such transactions."  To answer this interrogatory fully, the government almost certainly will have to identify potential criminal defendants, prosecution of whom the government might not be ready yet to disclose.  It appears likely that the government also will have to identify victims of schemes to promote child exploitation.  Surely, it is premature – and doubtless imprudent at the least – for the government to supply this information at this time.  A stay of these proceedings will defer the need to give claimants this information until after the criminal trial.

_/s/ William R. Cowden_
WILLIAM R. COWDEN, D.C. Bar No. 426301
Assistant United States Attorney
555 4th Street N.W.
Washington, D.C. 20530
(202) 307-0258 (with voice-mail)
(202) 514-8707 (Telefax)
William.Cowden@USDoJ.Gov

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **Civil Action No. 07-1337 (RMC)** |
| | : | |
| **ALL PROPERTY IN/UNDERLYING** | : | |
| **E-GOLD ACCOUNT NUMBERS:** | : | |
| | : | |
| **544179 AND 109243,** | : | |
| **Defendant.** | : | |
| ─────────────────────────── | : | |
| | : | |
| **Gold & Silver Reserve, Inc., and** | : | |
| **e-gold, Ltd.,** | : | |
| **Claimants.** | : | |
| ─────────────────────────── | : | |

## <u>ORDER</u>

This matter came before the Court on plaintiff's motion for a stay of the proceedings in this civil forfeiture action, pursuant to 18 U.S.C. § 981(g). Upon consideration of the representations in that motion, and the entire record herein, the Court determines that civil discovery will affect adversely the ability of the Government to prosecute a related criminal case, until 30 days following the return of a verdict in the related criminal case, <u>United States</u> v. <u>e-gold, Ltd., *et al.*</u>, Crim. No. 07-109 (RMC). Therefore, it is by the Court this _____ day of February 2008,

ORDERED, that plaintiff's motion for a stay of proceedings in this action be, and the same hereby is, GRANTED; and it is further

ORDERED, that proceedings in this action be, and the same hereby are, STAYED, until further order of the Court; and it is further

ORDERED, that within 30 days following the return of a verdict in the related criminal

case, United States v. e-gold, Ltd., *et al.*, Crim. No. 07-109 (RMC), the parties shall move the

Court to convene a status hearing in this action, or otherwise advise the Court when the stay may

be dissolved.

      SO ORDERED.

_____                     _____

Dated                                          ROSEMARY COLLYER
                                          United States District Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Civil Action No. 07-01337 (RMC) |
| ALL PROPERTY IN/UNDERLYING | ) | |
| E-GOLD ACCOUNT NUMBERS: | ) | |
| 544179 and 109243, | ) | |
| Defendant. | ) | |
| | ) | |

## GOLD & SILVER RESERVE, INC.'S
## INTERROGATORIES TO PLAINTIFF

Gold & Silver Reserve, Inc. ("G&SR"), by its undersigned counsel, pursuant to

Fed.R.Civ.P. 33, propounds these Interrogatories, to which plaintiff shall respond, writing and

under oath, within the time prescribed by the Federal Rules of Civil Procedure, in accordance

with the Instructions and Definitions set forth hereinafter.

## INSTRUCTIONS

1.    These instructions and definitions should be construed to require answers based

upon the knowledge of, and information available to, the responding party as well as its agents,

representatives, and, unless privileged, attorneys.  It is intended that the following discovery

requests will not solicit any material protected either by the attorney/client privilege or work

product doctrine which was created by, or developed by, counsel for the responding party after

the date on which this litigation was commenced.

2.    These Interrogatories are continuing in character, so as to require that

supplemental answers be filed seasonally if further or different information is obtained with

respect to any interrogatory.

3.    No part of an interrogatory should be left unanswered merely because an objection is interposed to another part of the interrogatory. If a partial or incomplete answer is provided, the responding party shall state that the answer is partial or incomplete.

4.    In accordance with Fed.R.Civ.P. 26(b)(5), where a claim of privilege is asserted in objecting to any interrogatory or part thereof, and information is not provided on the basis of such assertion:

(a)    In asserting the privilege, the responding party shall, in the objection to the interrogatory, or part thereof, identify with specificity the nature of the privilege (including work product) that is being claimed;

(b)    The following information should be provided in the objection, if known or reasonably available, unless divulging such information would cause disclosure of the allegedly privileged information,

(i)    For oral communications:

a.    the name of the person making the communication and the names of persons present while the communication was made, and where not apparent, the relationship of the persons present to the person making the communication;

b.    the date and place of the communication; and

c.    the general subject matter of the communication.

(c)    For documents:

(i)    the type of document,

(ii)    the general subject matter of the document,

(iii)    the date of the document, and

(iv)    such other information as is sufficient to identify the document, including, where appropriate, the author, addressee, custodian, and any other recipient of the document, and where not apparent, the relationship of the author, addressee, custodian, and any other recipient to each other.

5.      If the responding party elects to specify and produce business records in answer to any interrogatory, the specification shall be in sufficient detail to permit the interrogating party to locate and identify, as readily as the responding party can, the business records from which the answer may be ascertained.

6.      If, in answering these interrogatories, the responding party encounters any ambiguities when construing a question, instruction, or definition, the responding party's answer shall set forth the matter deemed ambiguous and the construction used in answering.

<u>DEFINITIONS</u>

Notwithstanding any definition below, each word, term, or phrase used in these Interrogatories is intended to have the broadest meaning permitted under the Federal Rules of Civil Procedure.

1.      *41 Page Dotson Affidavit:* The term "41 page Dotson Affidavit" refers to and includes the 41 page Affidavit of Roy Dotson, Special Agent of the United States Secret Service, dated June, 2007.

2.      *62 Page Dotson Affidavit:* The term "62 page Dotson Affidavit" refers to and includes the 62 page Affidavit of Roy Dotson, Special Agent of the United States Secret Service, dated June, 2007.

3.      *Claimant Companies:* The term "Claimant Companies" refers to and includes either or both of the following entities: e-gold, Ltd. and Gold & Silver Reserve, Inc., and all of their related businesses (including but not limited to OmniPay), officers, directors, owners, employees, agents and representatives.

4.      *Concerning:* The term "concerning" means relating to, referring to, describing, evidencing, or constituting.

5.    *Communication:* The term "communication" means the transmittal of information by any means.

6.    *Congressional Committee:*  The term "Congressional Committee" includes either branch of the United States Congress, and permanent, select or other committee thereof and/or the members and staff thereof or anyone working at the direction of the members or staff thereof.

7.    *Document:* The terms "document" and "documents" are defined to be synonymous in meaning and equal in scope to the usage of the term "documents" in Fed.R.Civ.P. 34(a) and include(s) the term "writing". Unless the producing party demonstrates undue burden or other grounds sufficient to meet the requirements of Fed.R.Civ.P. 26(c), electronic mail and all other electronically stored information is included within the definition of the term "document".  The terms "writings", "recordings", and "photographs" are defined to be synonymous in meaning and equal in scope to the usage of those terms in Fed.R.Evid. 1001.  A draft or non-identical copy is a separate document within the meaning of the term "document".

8.    *Give a complete account:* The term "give a complete account" means to state all facts in detail, to identify all documents relating to and to identify all persons involved in the matter in question.

9.    *Identify (with respect to persons):* When referring to a person, to "identify" means to state the person's full name, present or last known address, and, when referring to a natural person, additionally, the present or last known place of employment. If the business and home telephone numbers are known to the answering party, and if the person is not a party or present employee of a party, said telephone numbers shall be provided.  Once a person has been identified in accordance with this subparagraph, only the name of the person need be listed in response to subsequent discovery requesting the identification of that person.

10.    *Identify (with respect to documents):* When referring to documents, to "identify" means to state the: (i) type of document; (ii) general subject matter; (iii) date of the document; and, (iv) author(s), addressee(s), and recipient(s) or, alternatively, to produce the document.

11.    *Investment Scams:* The term "Investment Scams" refers to and includes any and all of the "Investment Scams" derived in the 62 page Dotson Affidavit.

12.    *Parties:* The terms "plaintiff" and "defendant" (including, without limitation, third-party plaintiff, third-party defendant, counter claimant, cross-claimant, counter-defendant, and cross-defendant), as well as a party's full or abbreviated name or a pronoun referring to a party, mean that party and, where applicable, its officers, directors, and employees. This definition is not intended to impose a discovery obligation on any person who is not a party to the litigation or to limit the Court's jurisdiction to enter any appropriate order.

13.    *Person:* The term "person" is defined as any natural person or any business, legal or governmental entity or association.

14.    *United States Agency:* The term "United States Agency" refers to and includes any agency or department of the United States Government, including specifically, but not limited to, the United States Secret Service, the United States Postal Service, the United States Treasury Department, the United States Department of Justice, the Federal Bureau of Investigation, the Financial Crimes Enforcement Network (FINCEN) and the Office of Foreign Assets Control (OFAC).

15.    *You/Your:*    The terms "you" or "your" include the plaintiff, the United States of America and all of its agents, representatives and attorneys.

16.    The present tense includes the past and future tenses. The singular includes the plural, and the plural includes the singular. "All" means "any and all"; "any" means "any and

all." "Including" means "including but not limited to." "And" and "or" encompass both "and" and "or." Words in the masculine, feminine or neuter form shall include each of the other genders.

## INTERROGATORIES

INTERROGATORY NO. 1: Identify all persons who are likely to have personal knowledge of any fact alleged in the complaint or a position that you expect to take in this action, and state the subject matter of the personal knowledge possessed by each such person.

INTERROGATORY NO. 2:   For each witness you have retained or specially employed to provide expert testimony in this case, or employed by you whose duties regularly involve giving expert testimony and who you expect to testify at trial, provide a complete statement of the opinions to be expressed and the basis and reasons therefor.

INTERROGATORY NO. 3: Identify any and all current or former employees of any of the Claimant Companies with whom you have had any communications and, for each such individual, describe the nature of each and every such communication by stating the date, the place and manner of the communication, the subject matter and substance of the communication, and the identity of any other persons who were present during the course, of, or who received a copy of, the communication.

INTERROGATORY NO. 4.: Identify any and all persons who have done business with any of the Claimant Companies with whom you have had any communications about the Claimant Companies and, for each such individual, describe the nature of each and every such communication by stating the date, the place and manner of the communication, the subject matter and substance of the communication, and the identity of any other persons who were present during the course, of, or who received a copy of, the communication.

INTERROGATORY NO. 5.: Identify each individual likely to have discoverable information that you may use to support your claims in this matter, identify the subjects of the information that each such person posses.

INTERROGATORY NO. 6.: Identify by category and location all documents that you may use to support your claims in this matter.

INTERROGATORY NO. 7.: Give a complete account of the facts upon which you intend to rely to support the assertion that e-gold has been widely accepted as a mechanism for funding transactions involving credit cards and identification fraud, including in your response the identities of all persons whom you contend have used e-gold for such purposes, the nature of the transactions in which they engaged, the dates of such transactions and the identities of all parties involved in such transactions.

INTERROGATORY NO. 8.: Give a complete account of the facts upon which you intend to rely to support the assertion that e-gold has been widely accepted as a mechanism for fraudulent "high-yield" investment programs, including in your response the identities of all persons whom you contend have used e-gold for such purposes, the nature of the transactions in which they engaged, the dates of such transactions and the identities of all parties involved in such transactions.

INTERROGATORY NO. 9.: Give a complete account of the facts upon which you intend to rely to support the assertion that e-gold has been widely accepted as a mechanism for investment scams, including in your response the identities of all persons whom you contend have used e-gold for such purposes, the nature of the transactions in which they engaged, the dates of such transactions and the identities of all parties involved in such transactions.

INTERROGATORY NO. 10.: Give a complete account of the facts upon which you intend to rely to support the assertion that e-gold has been widely accepted as a mechanism for child exploitation, including in your response the identities of all persons whom you contend have used e-gold for such purposes, the nature of the transactions in which they engaged, the dates of such transactions and the identities of all parties involved in such transactions.

INTERROGATORY NO. 11.: Identify all the persons who investigated the Claimant Companies on behalf of the Plaintiff and, for each such person, identify the agency for which that person worked and the title that she/he held, the dates that she/he was involved in the investigation, the identities of all persons with whom she/he communicated as a part of the investigation, all conclusions that she/he reached and identify all documents that she/he created as a part of that investigation.

INTERROGATORY NO. 12.: Identify by account number all e-gold accounts that any person investigating the Claimant Companies or other digital currency exchangers on behalf of the United States opened as a part of such an investigation, and identify the person(s) who opened that account.

INTERROGATORY NO. 13.: Give a complete account of each instance of "specified unlawful activity" that is the subject of your allegations in Paragraph 25 of the Complaint.

INTERROGATORY NO. 14.: Give a complete account of each financial transaction which you contend in Paragraph 25 of the Complaint was undertaken "with the intent to promote the carrying on of specified unlawful activity."

INTERROGATORY NO. 15.: Give a complete account of each financial transaction which you contend in Paragraph 25 of the Complaint was undertaken "with the intent to conceal

or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity."

INTERROGATORY NO. 16.: Give a complete account of the facts upon which you intend to rely to support the assertion in Paragraph 29 of the Complaint that the "e-gold operation constitutes a money transmitting business."

INTERROGATORY NO. 17.: Give a complete account of the "conspiracy to violate the anti-money laundering statutes" referred to in Paragraph 29 of the Complaint, including in your response a detailed description of the nature of the conspiracy, the identities of all persons whom you contend were involved in the conspiracy and an itemization (including persons involved, dates undertaken and acts performed) of all overt acts you contend were taken in furtherance of the conspiracy.

INTERROGATORY NO. 18.: Give a complete account of all transactions or attempted transactions which you contend the defendant property was involved in in violation of 18 U.S.C. § 1960, including in your response a detailed description of the nature of the conspiracy, the identities of all persons who you contend were involved in the conspiracy and an itemization (including persons involved, dates undertaken and acts performed) of all overt acts you contend were taken in furtherance of the conspiracy.

INTERROGATORY NO. 19.: Give a complete account of all communications that you have had with any United States Agency or Congressional Committee concerning the lawfulness or unlawfulness of the Claimant Companies' business operations or the requirement that the Claimant Companies register with the Financial Crimes Enforcement Network or obtain a license to operate their businesses.

INTERROGATORY NO. 20.: Give a complete account of the facts upon which you intend to rely to demonstrate that the Claimant Companies had knowledge that the defendant property derived from proceeds traceable to a "specified unlawfully activity," or was involved in or traceable to property involved in "financial transaction" the purpose of which was to (a) promote the carrying on of a "specified unlawful activity" as that term is defined by 18 U.S.C. § 1956(c)(4); and/or (b) conceal or disguise the nature, location, source, ownership or control of the proceeds of a "specified unlawful activity" as that term is defined by 18 U.S.C. § 1956(c)(7).

INTERROGATORY NO. 21.: Give a complete account of the facts upon which you intend to rely to demonstrate that the Claimant Companies had knowledge that the defendant property derived from proceeds traceable to a "specified unlawful activity," or was involved in or traceable to property involved in "financial transaction" the purpose of which was to (a) promote the carrying on of a "specified unlawful activity" as that term is defined by 18 U.S.C. § 1956(c)(4); and/or (b) conceal or disguise the nature, location, source, ownership or control of the proceeds of a "specified unlawful activity" as that term is defined by 18 U.S.C. § 1956(c)(7) upon which you rely to demonstrate to that the defendant property was involved in or is traceable to property involved in a conspiracy to violate the anti-money laundering statues in violation of 18 U.S.C. § 1956(h).

INTERROGATORY NO. 22.: List all of the searches that you have performed in the e-gold database described in Paragraphs 18 through 21 of the Roy Dotson 41 page Affidavit and the Roy Dotson 62 page Affidavit and provide a list of all the responses that you received as a result of those searches.

INTERROGATORY NO. 23.: With respect to the website and e-gold account number 4181605 described in Paragraph 26 through 30 of the Dotson 62 page Affidavit, give a complete

account of all efforts that you undertook to determine the ability of person accessing that site to purchase child pornography by using Visa, Master Card, American Express, Discover or PayPal and give a complete account of what you determined as a result of any such efforts.

INTERROGATORY NO. 24.: With respect to the website and e-gold account number 4181605 described in Paragraph 26 through 30 of the Dotson 62 page Affidavit, give a complete account of all facts upon which you rely to demonstrate that purchases made from that website and e-gold account were undertaken with the knowledge of the Claimant Companies.

INTERROGATORY NO. 25.: Give a complete account of when and how you first because aware of the Shadowcrew operation discussed in Paragraphs 31 through 36 of the Dotson 62 page Affidavit.

INTERROGATORY NO. 26.: Give a complete account of all communications that you had with the Claimant Companies concerning the Shadowcrew operation described in Paragraphs 31 through 26 of the Dotson 62 page Affidavit, including in your information all responses and materials that you received from the Claimant Companies in response to inquiries made in furtherance of the investigation into the Shadowcrew operation.

INTERROGATORY NO. 27.: If you contend that any persons involved in or related to the Shadowcrew operation had any communications with the Claimant Companies give a complete account of all such communications.

Aron U. Raskas
District of Columbia Bar No. 422939
KRAMON & GRAHAM, P.A.
One South Street, Suite 2600
Baltimore, Maryland 21202-3201
Telephone: 410-752-6030
Fax: 410-539-1269
Counsel for Gold & Silver Reserve, Inc.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on January 7, 2008, a true and correct copy of the foregoing

Gold & Silver Reserve, Inc.'s Interrogatories to Plaintiff was sent by first class mail, postage

prepaid, to:

> William R. Cowden, Esquire
> Assistant United State Attorney
> 555 4th Street, N.W.
> Room 4824
> Washington, D.C.  20530
>
> and to
>
> Mitchell S. Fuerst, Esquire
> Andrew S. Ittleman, Esquire
> Fuerst Humphrey Ittleman, PL
> 1001 Brickell Bay Drive, Suite 2002
> Miami, FL  33131
>
> Aron U. Raskas

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Civil Action No. 07-01337 (RMC) |
| ALL PROPERTY IN/UNDERLYING | ) | |
| E-GOLD ACCOUNT NUMBERS: | ) | |
| 544179 and 109243, | ) | |
| Defendant. | ) | |
| | ) | |

### GOLD & SILVER RESERVE, INC.'S
### REQUEST FOR PRODUCTION OF DOCUMENTS

Gold & Silver Reserve, Inc. ("G&SR"), by its undersigned counsel, pursuant to

Fed.R.Civ.P. 34, requests that plaintiff, the United States of America, respond to this Request

within the time prescribed by the Federal Rules of Civil Procedure, and produce the documents

requested below for inspection and copying at the offices of Kramon & Graham, P.A., One

South Street, Suite 2600, Baltimore, Maryland 21202, , or at such time and place as may be

agreed upon by all counsel.

### INSTRUCTIONS

1.     If, in responding to these requests for production, the responding party encounters

any ambiguities when construing a request or definition, the response shall set forth the matter

deemed ambiguous and the construction used in responding.

2.     Whenever in this Request you are asked to identify or produce a document which

is deemed by you to be properly withheld from production for inspection or copying:

A. If you are withholding the document under claim of privilege (including, but

not limited to, the work product doctrine), please provide the information set forth in

Fed.R.Civ.P. 26(b)(5), including the type of document, the general subject matter of the

document, the date of the document, and such other information as is sufficient to identify the document, including, where appropriate, the author, addressee, custodian, and any other recipient of the document, and where not apparent, the relationship of the author, addressee, custodian, and any other recipient to each other, in a manner that, without revealing the information claimed to be protected, will enable this party to assess the applicability of the privilege or protection claimed by you;

B. If you are withholding the document for any reason other than an objection that it is beyond the scope of discovery or that a request is unduly burdensome, identify as to each document and, in addition to the information requested in ¶2.A, above, please state the reason for withholding the document.

3.    When a document contains both privileged and non-privileged material, the non-privileged material must be disclosed to the fullest extent possible without thereby disclosing the privileged material. If a privilege is asserted with regard to part of the material contained in a document, the party claiming the privilege must clearly indicate the portions as to which the privilege is claimed. When a document has been redacted or altered in any fashion, identify as to each document the reason for the redaction or alteration, the date of the redaction or alteration, and the person performing the redaction or alteration. Any redaction must be clearly visible on the redacted document.

4. It is intended that the following discovery requests will not solicit any material protected either by the attorney/client privilege or by the work product doctrine which was created by, or developed by, counsel for the responding party after the date on which this litigation was commenced. If any inquiry is susceptible of a construction which calls for the

production of such material, that material need not be provided and no privilege log pursuant to Fed.R.Civ.P. 26(b)(5) will be required as to such material.

5. If production of any requested document(s) is/are objected to on the grounds that production is unduly burdensome, describe the burden or expense of the proposed discovery.

6. Subject to the following sentence, electronically stored information is requested to be produced in searchable PDF format accompanied by load files containing necessary textual content and relevant metadata sufficient to display, for each document, the identities of the persons who created and received the document, the dates upon which the document was created and accessed by persons reviewing it and other readily available identifying information. Electronically stored information such as voicemail messages and other sound recordings, animated content, web pages, video files and spreadsheets or large databases should be produced in a native or quasi-native format. Notwithstanding all of the foregoing, nothing set forth herein is intended to relieve you of the continuing obligation to preserve in a native format all metadata relating to any responsive documents; rather, all such electronically stored information, including metadata should be preserved until the conclusion of this litigation.

## DEFINITIONS

Notwithstanding any definition set forth below, each word, term, or phrase used in this Request for Production of Documents is intended to have the broadest meaning permitted under the Federal Rules of Civil Procedure. As used in these requests, the following terms are to be interpreted in accordance with these definitions:

1.    *41 Page Dotson Affidavit:*  The term "41 page Dotson Affidavit" refers to and includes the 41 page Affidavit of Roy Dotson, Special Agent of the United States Secret Service, dated June, 2007.

2.    *62 Page Dotson Affidavit:*  The term "62 page Dotson Affidavit" refers to and includes the 62 page Affidavit of Roy Dotson, Special Agent of the United States Secret Service, dated June, 2007.

3.    *Claimant Companies:*  The term "Claimant Companies" refers to and includes either or both of the following entities: e-gold, Ltd. and Gold & Silver Reserve, Inc., and all of their related businesses (including, but not limited to, OmniPay), officers, directors, owners, employees, agents and representatives.

4.    *Communication:*  The term "communication" means the transmittal of information by any means.

5.    *Concerning:*   The term "concerning" means relating to, referring to, describing, evidencing, or constituting.

6.    *Congressional Committee:*  The term "Congressional Committee" includes either branch of the United States Congress, and permanent, select or other committee thereof and/or the members and staff thereof or anyone working at the direction of the members or staff thereof.

7.    *Document:*  The terms "document" and "documents" are defined to be synonymous in meaning and equal in scope to the usage of the term "documents" in Fed.R.Civ.P. 34(a) and include(s) the term "writing". Unless the producing party demonstrates undue burden or other grounds sufficient to meet the requirements of Fed.R.Civ.P. 26(c), electronic mail is included within the definition of the term "document". The terms "writings", "recordings", and "photographs" are defined to be synonymous in meaning and equal in scope to the usage of those terms in Fed.R.Evid. 1001. A draft or non-identical copy is a separate document within the meaning of the term "document".

8.    *Give a complete account:* The term "give a complete account" means to state all facts in detail, to identify all documents relating to and to identify all persons involved in the matter in question.

9.    *Identify (with respect to persons):* When referring to a person, to "identify" means to state the person's full name, present or last known address, and, when referring to a natural person, additionally, the present or last known place of employment. If the business and home telephone numbers are known to the answering party, and if the person is not a party or present employee of a party, said telephone numbers shall be provided. Once a person has been identified in accordance with this subparagraph, only the name of the person need be listed in response to subsequent discovery requesting the identification of that person.

10.    *Identify (with respect to documents):* When referring to documents, to "identify" means to state the: (i) type of document; (ii) general subject matter; (iii) date of the document; and, (iv) author(s), addressee(s), and recipient(s) or, alternatively, to produce the document.

11.    *Investment Scams:* The term "Investment Scams" refers to and includes any and all of the "Investment Scams" derived in the 62 page Dotson Affidavit.

12.    *Occurrence/Transaction:*    The terms "occurrence" and "transaction" mean the events described in the Complaint and other pleadings, as the word "pleadings" is defined in Fed.R.Civ.P. 7(a).

13.    *Parties:* The terms "plaintiff" and "defendant" (including, without limitation, third-party plaintiff, third-party defendant, counter claimant, cross-claimant, counter-defendant, and cross-defendant), as well as a party's full or abbreviated name or a pronoun referring to a party, mean that party and, where applicable, its officers, directors, and employees. This

definition is not intended to impose a discovery obligation on any person who is not a party to the litigation or to limit the Court's jurisdiction to enter any appropriate order.

14.    *Person*:  The term "person" is defined as any natural person or any business, legal or governmental entity, or association.

15.    *United States Agency:*  The term "United States Agency" refers to and includes any agency or department of the United States Government, including specifically, but not limited to, the United States Secret Service, the United States Postal Service, the United States Treasury Department, the United States Department of Justice, the Federal Bureau of Investigation, the Financial Crimes Enforcement Network (FINCEN) and the Office of Foreign Assets Control (OFAC).

16.    *You/Your:* The terms "you" or "your" include the plaintiff, the United States of America, and all of its  agents, representatives and attorneys.

17.    The present tense includes the past and future tenses.  The singular includes the plural, and the plural includes the singular.  "All" means "any and all"; "any" means "any and all."  "Including" means "including but not limited to."  "And" and "or" encompass both "and" and "or."  Words in the masculine, feminine or neuter form shall include each of the other genders.

18.    If the requested documents are maintained in a file, the file folder is included in the request for production of those documents.

## DOCUMENT REQUESTS

1.    All documents referred to in your Answers to Interrogatories.

2.    All statements (as that term is used in Fed.R.Civ.P. 26(b)(3)) made at any time by any of the Claimant Companies concerning this action or its subject matter.

3.    All documents (including, but not limited to, fee agreements, reports, and correspondence) provided to, received from, or prepared by  each witness identified by you in connection with the disclosures required by Fed.R.Civ.P. 26(a)(2)(A).

4.  All documents concerning Dr. Douglas Jackson.

5.  All documents concerning Barry K. Downey.

6.  All documents concerning Reid Jackson.

7.  All documents concerning e-gold, Ltd.

8.  All documents concerning Gold & Silver Reserve, Inc. and/or OmniPay.

9.  All documents concerning communications between any United States Agency or Congressional Committee and Dr. Douglas Jackson.

10.  All documents concerning communications between any United States Agency and Barry K. Downey.

11.  All documents concerning communications between any United States Agency and Reid Jackson.

12.  All documents concerning communications between any United States Agency and Randy Trotter.

13.  All documents concerning communications between any United States Agency and Wanda Trotter.

14.  All documents concerning communications between any United States Agency and any agent representative or employee of the Claimant Companies other than those mentioned in request numbers 11 through 15.

15.  All documents constituting communications between any United States Agency and any person identified in the 41 Page Dotson Affidavit.

16. All documents constituting communications between any United States Agency and any person identified in the 62 Page Dotson Affidavit.

17. All documents concerning statements of opinions about the legality or illegality of the businesses operated by the Claimant Companies issued by any United States Agency, including, but not limited to, whether the Claimant Companies were to be considered subject to the Bank Secrecy Act; whether the Claimant Companies were required to be licensed as money transmitting businesses; and whether the Claimant Companies were required to register with FINCEN.

18. All documents concerning searches that you performed in the e-gold database as described in Paragraphs 14 through 21 of the 41 Page Dotson Affidavit and the 62 Page Dotson Affidavit.

19. All documents created by, reflected in or disclosed as a result of the searches that you performed in the e-gold database as described in Paragraphs 14 through 21 of the 41 Page Dotson Affidavit and the 62 Page Dotson Affidavit.

20. All documents created by Agent Roy Dotson or any person working with him concerning matters reflected in the Dotson Affidavits.

21. All documents reviewed by Agent Roy Dotson or any person working with him concerning matters reflected in the Dotson Affidavits.

22. The Excel spreadsheet referred to in paragraph 20 of the 41 Page Dotson Affidavit.

23. All documents concerning the website and e-gold Account No. 4181605 described in paragraph 26 through 30 of the Dotson 62 page Affidavit.

24. All documents concerning the Shadowcrew operation discussed in paragraphs 31 through 36 of the Dotson 62 page Affidavit.

25.  All documents concerning communications between Douglas Jackson and agents of New Scotland Yard's National Terrorists Financial Investigation Unit.

_[signature]_

Aron U. Raskas
District of Columbia Bar No. 422939
KRAMON & GRAHAM, P.A.
One South Street, Suite 2600
Baltimore, Maryland 21202-3201
Telephone: 410-752-6030
Fax: 410-539-1269


Counsel for Gold & Silver Reserve, Inc.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on January 7, 2008, a true and correct copy of the foregoing

Gold & Silver Reserve, Inc.'s Request for Production of Documents was sent by first class mail,

postage prepaid, to:

> William R. Cowden, Esquire
> Assistant United State Attorney
> 555 4th Street, N.W.
> Room 4824
> Washington, D.C.  20530
>
> and to
>
> Mitchell S. Fuerst, Esquire
> Andrew S. Ittleman, Esquire
> Fuerst Humphrey Ittleman, PL
> 1001 Brickell Bay Drive, Suite 2002
> Miami, FL  33131

Aron U. Raskas